```
            IN THE UNITED STATES DISTRICT COURT OF THE
                  SOUTHERN DISTRICT OF MISSISSIPPI
                         WESTERN DIVISION


KAELIN DAYE                                              PLAINTIFF


v.                             CIVIL ACTION NO.: 5:24-CV-100-DCB-LGI


UNITED AUTO CREDIT CORPORATION,
VROOM, INC., and
JOHN DOE DEFENDANT                                      DEFENDANTS
```

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Compel Arbitration [ECF No. 3] that was filed by Defendants United Auto Credit Corporation ("United") and Vroom Automotive, LLC d/b/a Vroom[1] ("Vroom"; United and Vroom are referred to collectively as "Defendants"). Having reviewed the parties' submissions and applicable law, the Court finds that the Motion to Compel Arbitration should be granted.

**BACKGROUND**

Plaintiff filed this case in the Circuit Court of Adams County, Mississippi, against United and a "John Doe" defendant. [ECF No. 1-1] at 5. She later amended her complaint and added Vroom as a defendant. Id. at 33. According to the First

---

[1] In its Notice of Removal, Vroom advises that it has been improperly identified as Vroom, Inc. in this litigation. [ECF No. 1] at 1.

1

Amended Complaint,[2] Plaintiff entered a binding contract with Vroom, a used vehicle e-commerce company, for the purchase and finance of a vehicle.  Id. at 33, 35.  A resident of Natchez, Mississippi, Plaintiff traveled to Texas where she test-drove and purchased the vehicle from Vroom.  Id.  Two of the documents that Plaintiff signed at the closing contain arbitration provisions: one is titled "Motor Vehicle Retail Installment Sales Contract - Simple Finance Charge (With Arbitration Provision)", [ECF No. 30-3]; and a second is titled "Vroom Retail Purchase Agreement".  [ECF No. 30-4].

After Plaintiff took possession of the vehicle, a dispute developed over her financing approval, which eventually resulted in repossession of the vehicle and the filing of this lawsuit in state court.  Defendants removed the case to this Court on the grounds of diversity jurisdiction, [ECF No. 1], and filed the Motion to Compel Arbitration (the "Motion") now under

---

[2] Plaintiff recently filed a Motion for Leave to File a Second Amended Complaint [ECF No. 27] on the same day that Defendants filed their rebuttal brief in support of their Motion to Compel Arbitration at issue here.  In her proposed Second Amended Complaint, [ECF No. 27-1] ¶ 7A, Plaintiff reneges on the allegation that she made in her original complaint, [ECF No. 1-1] at 7, ¶9, and repeated in her First Amended Complaint, [ECF No. 1-1] at 35, ¶10, that a binding contract was formed. Plaintiff's motion for leave to file her proposed second amended complaint does not change the Court's conclusion that this matter is subject to arbitration.  If Plaintiff believes that a second amendment to her complaint is needed, she may explore that possibility in arbitration subject to applicable arbitral rules and procedures.

2

consideration. [ECF No. 3]. In their Motion, Defendants seek to enforce the arbitration provision in the Motor Vehicle Retail Installment Sales Contract (the "Contract") and not the one contained in the Vroom Retail Purchase Agreement (the "Purchase Agreement"). [ECF No. 31] at 7.

## DISCUSSION

Defendants argue that the Contract contains a valid arbitration provision with a delegation clause.[3] [ECF No. 4] at 8, 18. Plaintiff does not deny that the Contract's arbitration provision contains a delegation clause. [ECF No. 30] at 36.[4] In delegation clause cases such as this one, the Fifth Circuit directs district courts to follow

---

[3] In the context of arbitration, a delegation clause is "a written agreement sending disputes about arbitrability to an arbitrator". Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018). And "arbitrability" is the gateway issue of deciding whether claims are covered by the arbitration agreement. Kubala, 830 F.3d at 201 (5th Cir. 2016) (arbitrability involves contract interpretation to determine whether a specific claim is covered by the arbitration agreement). Delegation clauses transfer the court's power to decide arbitrability questions to the arbitrator. Kubala, Inc., 830 F.3d 199, 202 (5th Cir. 2016). As Justice Scalia explained: "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68–69 (2010).

[4] Plaintiff not only acknowledges the presence of a delegation clause in the Contract's arbitration provision, she also reads, perhaps mistakenly, the arbitration section of the Purchase Agreement to contain a delegation clause. [ECF No. 30] at 36. Plaintiff's arguments regarding inconsistencies in the two arbitration provisions are addressed infra.

3

a limited two-step analysis in ruling on the motion to compel: "first, whether the parties entered into a valid agreement to arbitrate *some* set of claims; and second, whether that agreement actually does contain a delegation clause that requires that this claim go to arbitration for gateway rulings on threshold arbitrability issues." Kubala v. Supreme Prod. Servs., Inc., 830 F.3d 199, 202 (5th Cir. 2016) (emphasis in the original). Simply put, " … we first look to see if an agreement to arbitrate was formed, then determine if it contains a delegation clause." Edwards v. Doordash, Inc., 888 F.3d 738, 744 (5th Cir. 2018) (Southwick, J. writing for a unanimous panel). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." Kubala, Inc., 830 F.3d at 202.

A.  Step 1 - Whether an arbitration agreement was formed

The Court begins its analysis by applying state contract law to determine whether an agreement to arbitrate was formed. Doordash, 888 F.3d at 744. To be clear, the Court's task at this point is to evaluate contract formation only with respect to the arbitration provision and not to determine the enforceability of the arbitration provision or of the entire Contract as Plaintiff suggests in her opposition brief. E.g., [ECF No. 30] at 19, 20, 22, 25, 33, 39-43); Bowles v. OneMain Fin. Grp., L.L.C., 954 F.3d 722, 725–26 (5th Cir. 2020) (court distinguished between challenges to contract formation and challenges to enforceability such as unconscionability, which had to be sent to an arbitrator under the delegation clause).

4

The Contract includes a choice-of-law provision, which specifies: "Federal and Texas law apply to this contract." [ECF No. 30-3] at 1. Although Plaintiff states on page one of her opposition brief that the Motion must be denied under "controlling principles of Mississippi and Texas contract law", she later argues that the Court must evaluate the validity of the Contract and its arbitration provision solely under Mississippi law. [ECF No. 30] at 1 & 20. According to Plaintiff, this is so because Mississippi is the state where: (i) she filed her case, (ii) the transaction was negotiated, (iii) Vroom conducted business, and (iv) Plaintiff is located. Id. at 20. Applying the six essential elements of contract formation under Mississippi law,[5] Plaintiff concludes that "there is no contract in existence." Id.

Plaintiff's argument strikes the Court as too clever by half. She chose to travel from Mississippi to Vroom's location in Stafford, Texas, where she signed purchase and financing documentation with Vroom, paid the agreed upon down payment, and then benefitted from the transaction by returning home with her newly purchased vehicle. She

---

[5] Under Mississippi law, the elements of a contract are: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation. Logan v. RedMed, LLC, 377 So. 3d 956, 962 (Miss. 2024) (citations and quotations omitted).

5

states in her affidavit:

> 3. I selected a Cadillac ATS-V and initiated the automobile research process through Vroom's e-commerce platform while in Mississippi. Then, on or around October 15, 2021, I traveled to Stafford, Texas, to finalize the purchase from Vroom.
>
> 4. I thought I entered into a contract with Vroom for a total purchase price of $52,120.35. As part of the purchase, I made a substantial down payment totaling $12,920.00. This down payment was split between a cash payment of $9,500.00, a debit card payment of $2,000.00, and a credit card payment of $1,420.00, as recommended by Vroom.

[ECF No. 30-2] ¶¶ 3&4. Whether analyzed under Texas or Mississippi law, the facts indicate that the parties reached an agreement in Texas; otherwise, Plaintiff never would have tendered her down payment, and she never would have been able to leave with the vehicle. Plaintiff cannot now cherry-pick select parts of her agreement with Vroom that she wants to pursue in litigation - while disavowing other parts, such as the arbitration provision, which she wants to avoid. See Washington Mut. Fin. Grp., LLC v. Bailey, 364 F.3d 260, 268 (5th Cir. 2004) (court rejected plaintiff's attempt to sue based upon one part of a transaction that arguably granted her rights while simultaneously attempting to avoid other parts of the same transaction such as the arbitration agreement).

Plaintiff cites no controlling precedent to justify overruling the parties' express choice of Texas law that is stated in the Contract. To do so would be contrary to Section 187 of the

6

Restatement Second of Conflicts of Laws.[6]  The Mississippi Supreme Court has cited with approval the Restatement (Second) of Conflicts of Laws (1971).  See Boardman v. United Services Auto. Ass'n, 470 So.2d 1024, 1032–34 (Miss. 1985).  Under Mississippi law, "parties may legitimately control the choice of substantive law in a contract dispute as long as the state law selected bears a reasonable relation to the transaction."  FMC Finance Corp. v. Murphree, 632 F.2d 413, 418 (5th Cir. 1980); accord Sorrels Steel Co. v. Great Sw. Corp., 906 F.2d

---

[6] Section 187 of the Restatement Second of Conflicts of Laws, which is titled "Law of the State Chosen by the Parties", provides:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
  (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

  (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement (Second) of Conflict of Laws § 187 (1971).

158, 167–68 (5th Cir.), opinion amended on other grounds, 914 F.2d 695 (5th Cir. 1990). Vroom is a Texas limited liability company with its principal place of business located in the State of Texas. Plaintiff traveled to Stafford, Texas, where she signed agreements, closed her deal with Vroom, and took possession of the purchased vehicle. The Court finds that Texas law bears a reasonable relation to the parties' transaction. Plaintiff bears the burden of proving that the governing law provision should be disregarded; on these facts, she has failed to do so. Haynsworth v. The Corp., 121 F.3d 956, 963 (5th Cir. 1997).

Finding no reason to ignore the parties' stated intent regarding choice-of-law, the Court will turn to Texas contract law in applying step one of the Kubula analysis. Under Texas law, "'[t]he elements needed to form a valid and binding contract are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration.' [*Specialty Select Care Ctr. of San Antonio, L.L.C. v. Owen*, 499 S.W.3d 37, 43 (Tex. App.—San Antonio 2016)]." Stephenson v. Rackspace Tech., Inc., No. SA-22-CV-01296-XR, 2023 WL 3551016, at *5 (W.D. Tex. May 18, 2023). "When an arbitration agreement is part of an underlying contract, the rest of the agreement provides the necessary consideration." Id. (citing In re AdvancePCS Health L.P., 172 S.W.3d 603, 607 (Tex. 2005)). Also under Texas law, "a contract is viewed **as of the time it was made and not in light of subsequent events.**" Texas v. Am. Tobacco Co., 463 F.3d 399, 407 (5th

8

Cir. 2006) (citing <u>Ervay, Inc. v. Wood</u>, 373 S.W.2d 380, 384 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.))(emphasis added). Plaintiff's sworn statements in her affidavit, the parties' signed closing documents which include the arbitration provision at issue, Plaintiff's tendering of the agreed-upon down payment, Vroom's relinquishment of the purchased vehicle to Plaintiff and her acceptance in taking possession of the vehicle demonstrate that "on or around October 15, 2021," an agreement to arbitrate was formed.

Although the vast majority of Plaintiff's arguments pertain to alleged events that occurred after she closed her vehicle purchase transaction with Vroom and to the merits of her lawsuit – all of which the Court finds to be subject to arbitration, Plaintiff raises the issue of inconsistencies between the arbitration provision in the Contract and that in the Purchase Agreement.  Such inconsistencies are not "subsequent events" and potentially could affect contract formation.  Plaintiff argues in her opposition brief:

> Ms. Daye signed two separate arbitration agreements and delegation clauses on the same day, each containing conflicting terms related to the scope of arbitration, cost responsibilities, and the location of arbitration proceedings. These inconsistencies, discussed in detail in Section H, *infra,* create significant ambiguity, undermine mutual assent, and raise questions about the validity of both agreements.

[ECF No. 30] at 8.  Section H of Plaintiff's opposition brief details the perceived inconsistencies starting with a misreading of the exceptions to arbitration in the Contract.  Plaintiff points to a

9

small claims court exception in the Purchase Agreement's arbitration provision and contends that the arbitration provision in the Contract differs significantly because it "does not exclude small claims court," thereby eliminating "an important consumer protection that was present in the Retail Purchase Agreement." Id. at 36. But the Court finds that the Contract's arbitration provision states the exact opposite:

> You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief.

[ECF No. 30-3] at 5. Plaintiff next claims that "[b]oth agreements contain delegation clauses, but they differ in their emphasis and scope." [ECF No. 30] at 36. The Court's reading of the two arbitration provisions leads to the conclusion that there is a delegation clause in the Contract's arbitration provision that transfers the court's power to decide arbitrability questions to the arbitrator, but there is no such delegation clause regarding arbitrability in the Purchase Agreement's arbitration provision. Yet the Court notes that the Purchase Agreement contains a "conflicts-of-agreement" clause within its arbitration provision, which gives priority to the arbitration provision in the Contract:

> However, in the event this arbitration provision conflicts with an arbitration provision in the [Retail Installment

10

> Sales Contract ("RISC")](where applicable), the provision
> in your RISC is controlling. [ECF No. 30-4] at 5, ¶ 15(j).

The Purchase Agreement further provides in its "Entire Agreement" paragraph that the Contract controls in the event of any conflict with the Purchase Agreement:

> To the extent there is a conflict between the terms of this
> agreement and the terms of any applicable RISC, the RISC
> shall control. [ECF No. 30-4] at 6, ¶ 18.

Plaintiff's remaining points regarding inconsistencies in cost responsibilities and location of the arbitration proceedings are resolved by the conflicts-of-agreement clauses reproduced above and by Fifth Circuit precedent. Matter of Willis, 944 F.3d 577, 581–82 (5th Cir. 2019) (conflicting provisions in two arbitration agreements over procedural details such as the number of arbitrators, location, and costs are non-essential and do not impact the formation of arbitration agreements that demonstrate a baseline intent to arbitrate).

B. Step 2 – Does the arbitration agreement contain a delegation clause?

Having determined that an agreement to arbitrate was formed, the Court turns to the second step in the Kubala analysis: whether the arbitration agreement contains a delegation clause that requires arbitration for gateway rulings on threshold arbitrability issues. Kubala, 830 F.3d at 202; accord Doordash, 888 F.3d at 745. Immediately after introductory warnings in bold type about "Your Legal Rights", the first sentence of the Contract's arbitration provision states:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract), shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

[ECF No. 30-3] at 5.  Plaintiff does not dispute that there is a delegation clause in the Contract's arbitration provision.  <u>Kubala</u>'s second step is satisfied.

## CONCLUSION

Having found that the parties formed an arbitration agreement with a valid delegation clause, the Court will grant Defendants' Motion to Compel Arbitration [ECF No. 3].  In reaching its decision, the Court considered all arguments presented by the parties in their submissions, including those not expressly addressed in this Memorandum Opinion and Order.  Any argument that is not addressed in this opinion would not change the outcome.

Accordingly,

**IT IS ORDERED that** Defendants' Motion to Compel Arbitration [ECF No. 3] is **GRANTED,** and all Plaintiff's claims now pending against Defendants in this action are referred to arbitration.  The parties are ordered to submit the dispute to arbitration in accordance with the arbitration provision set forth in the "Motor Vehicle Retail Installment Sales Contract - Simple Finance Charge (With Arbitration

12

Provision)" [ECF No. 30-3];

**IT IS FURTHER ORDERED that,** given the referral of all Plaintiff's claims to arbitration, the pending Motion for Leave to File Second Amended Complaint [ECF No. 27] is **DENIED** without prejudice as moot;

**IT IS FURTHER ORDERED that** this case is **STAYED** pending the resolution of arbitration among Kaelin Daye, United Auto Credit Corporation, and Vroom Automotive, LLC.

**SO ORDERED,** this the 25th day of September 2025.

                                                   /s/ David C. Bramlette
                                                  United States District Judge